BURNS v. MULLIN.

(Supreme Court, Appellate Division, First Department. June 23, 1899.)

1. WITNESSES—COMPETENCY—CONVERSATION WITH DECEDENT.

Code Civ. Proc. § 829, prohibiting a party or person interested in the event from testifying in his own behalf against the executor, administrator, or survivor of a decedent concerning a personal transaction or communication between the witness and the decedent, does not apply to a conversation between the decedent and the plaintiff, in which the witness, who is defending the action, took no part, but which took place in her presence and hearing.

2. SAME—PARTY CONTRADICTING WITNESSES.

Where witnesses testify to conversations between a decedent and plaintiff, to which he is precluded from testifying by Code Civ. Proc. § 829, he cannot be examined as a witness in his own behalf to contradict the state-

ments of such witnesses as to what was said in such conversations, though
he may testify that such conversations did not occur, or give the whole
thereof, where the witnesses have only stated part of what was said.

Appeal from special term, New York county.

Action by Agnes E. Burns against Mary A. Mullin, individually and
as executrix, in a paper propounded as the last will and testament of
Agnes Golden, deceased. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON,
and O'BRIEN, JJ.

Rastus S. Ransom, for appellant.
John G. Boyd, for respondent.

PATTERSON, J. The plaintiff, one of the children of Charles and
Agnes Golden (who are now deceased), brought this action, seeking to
have charged upon certain real estate, formerly belonging to her
father and mother, and the title to which is now vested in her sister,
the defendant, certain sums of money which she claims to have advanced to her parents in the lifetime of her father for the purpose of
enabling him to pay or keep down charges and incumbrances upon
the property, and under an alleged agreement made with him and
assented to by Mrs. Golden, to the effect that the advances so made
should constitute a lien or claim upon the property, or that the property should stand as security for such advances. The plaintiff prayed
that an account of such moneys be taken; that the advances be declared to constitute a valid lien upon the property; that certain
deeds and transfers of that property by which the defendant, Mary
Mullin, became vested with the title to it be declared void; and that
the property, or so much thereof as may be necessary to satisfy the
plaintiff's claim, be sold, and for such other relief as may be just.
The complaint was dismissed on the merits, and the plaintiff appeals
from the judgment of dismissal.

The ground upon which the complaint was dismissed was that no
agreement was made, nor was any understanding had, between the
plaintiff and her father and mother that the plaintiff should have a
lien or any interest whatsoever in the property mentioned in the
complaint by reason or on account of any payments made to or for
them by the plaintiff; that none of the payments made by the plaintiff to Golden or his wife were upon an understanding or agreement
that the plaintiff should have any interest in the real estate set forth
in the complaint by reason or on account of any such payment or
advances; and that, on the whole case, the plaintiff failed to establish
a right to any equitable or other relief in the action. At the trial
the case turned upon the issue of fact of an agreement having been
made or an understanding had of the character claimed by the plaintiff. It was proven that the plaintiff, who was a school-teacher in
the city of New York, had for many years prior to the death of
Charles Golden, in May, 1891, been in the habit of handing to him or
to his wife the monthly check she received in payment of her salary
as such school-teacher, and it is not open to doubt on the whole record

that during a period of time beginning in May, 1876, down to the month preceding the death of her father, she did pay to him in the aggregate, in the manner stated, the sum of very nearly $11,000. It is also clearly established by the proof that the moneys so received by the plaintiff's parents were used in whole or in part in the payment of interest upon mortgages, or in satisfaction of other charges upon some of the real estate described in the complaint. But the evidence respecting the terms upon which the moneys were paid to and received by Golden was so conflicting that the justice at special term was authorized to make the findings he did make in regard thereto. The plaintiff's claim respecting the relations established between herself and her parents with regard to the moneys is as before stated. The defendant claimed that the moneys paid in by the plaintiff to her parents were, from 1879 down to the time of her father's death, so paid for board for herself and her two children. It is not contradicted that the plaintiff (who was married in 1879) did live and board with her parents continuously from some time in August, 1879, down to the death of her father, and that her two children lived and boarded with their grandparents from the time of their birth until the death of Mr. Golden. The plaintiff swears that after her marriage she returned to her father's house in 1879, and that there was a distinct arrangement made between herself and him as follows:

"My father told me, if I would go to school and continue teaching, and come to him and hand him my salary as teacher, the same as I had before marriage, he would take no board from me, and that after the property was cleared he would pay me every cent I gave into that property, and after he died the property was to be equally divided between my mother and I and my sister, and my brother should be paid for every cent he put in."

He also said:

"Agnes, you find no fault. That money all went to buy this house. It always has been to you security for the money that you are giving to me."

And she swore that "no board was ever paid into the house by any one," and that the conversation to which she last referred was in March, 1880. The plaintiff's husband corroborates her, and there are other witnesses called by her, who testify to a state of facts substantially according with the statements of the plaintiff. On the other hand, there is the most emphatic testimony of witnesses, some of whom are wholly disinterested, who declare that they heard the plaintiff state on various occasions that she was paying board for herself and her children to her father, and there are other witnesses for the defendant who testify that they were present at conversations between the plaintiff and her parents when the specific agreements for board were entered into between those parties. There is nothing inconsistent with the idea of the plaintiff's paying board in the uses to which Mr. Golden put the money, and he may have declared, and doubtless did declare time and again, that it was the money he received from his daughter that enabled him to carry the property. The trial judge must have relied upon the statements of the witnesses for the defendant concerning the agreement to pay board, and must have reached the conclusion that the moneys paid in by the plaintiff were for the board of herself and her children; and, having reached that

conclusion, the finding that the moneys were not advanced as loans to be repaid from or secured upon the real estate was necessarily authorized. We have examined the whole record very carefully to ascertain whether or not the condition of the proof would justify an inference that the loan of the money may be regarded as an equivalent for board, or stand in the place of paying board, as seems to be claimed under the plaintiff's own testimony; but the evidence on the part of the defendant is such as to render that view of the subject altogether inadmissible. We cannot therefore interfere with the decision upon the merits as the court below, by its findings, has determined them to be. It is urged, however, by the appellant that errors were committed on the trial in the admission of the testimony of some witnesses and the rejection of that offered of other witnesses. All of those objections arise under the provisions of section 829 of the Code of Civil Procedure.

First, it is objected that Mrs. Mullin, the defendant, was permitted to testify to a conversation had between the plaintiff and her father and mother in the defendant's presence and hearing. That conversation took place in 1876, when the plaintiff first began to teach school. It does not appear that Mrs. Mullin took part in this conversation. It was an important piece of testimony undoubtedly, for the witness swore that at that conversation Mr. Golden told the plaintiff that he had supported her until that time, and that thenceforth she (the plaintiff) and her brother and sister must pay board, and that the plaintiff said she would willingly do so, and that she would be only too happy to help her family. It was claimed that the defendant was disqualified from testifying as to this conversation, because she is a party interested in the event of this action; but her testimony did not relate to a conversation or communication had between her and a deceased person, under whom she claims. The prohibition of the statute applies to a person interested in the event testifying concerning a personal transaction or communication between the witness and the deceased person. This was not a transaction or communication between this witness and the deceased person. As was said in Denise v. Denise, 110 N. Y. 568, 18 N. E. 370:

"It does not really, or by ordinary construction, involve a personal transaction between the plaintiff and the intestate. * * * It is a statement of a fact of which the witness had knowledge, not of a transaction between her and the deceased."

But it was not evidence that could be excluded under section 829 of the Code of Civil Procedure. The plaintiff claimed under an agreement with Charles Golden, which was binding also on Mrs. Golden. A personal transaction or communication between the plaintiff and her parents was the matter to be proved. Mrs. Mullin derives her title from her mother and father; and, by the express terms of the statute, the plaintiff was prohibited from testifying to such a personal transaction or communication against Mrs. Mullin. But section 829 of the Code does not enact that Mrs. Mullin was not competent to testify to a personal transaction between the plaintiff and her father. On the contrary, it would seem

to authorize her so to testify by necessary implication, because it provides in effect that, if she should so testify, the adverse party is at liberty also to testify; and the objection to Mrs. Mullin's testimony, therefore, was properly overruled.

Second, it is claimed that there was error in not permitting the plaintiff to answer certain questions put to her respecting matters testified to by the defendant's husband and by other of the defendant's witnesses as to conversations had between the father and mother and the plaintiff on the subject of board. Mr. Mullin testified that he was present and heard a conversation in relation to a charge of board for one of the infant children, and he also testified that Mrs. Golden asked the plaintiff to pay board which she owed. Katie Kingsley, a witness for the defendant, testified that she was present at a conversation between the father and mother and the plaintiff, and that the plaintiff agreed to pay a certain sum a week for the board of herself and one of the children. This witness also testified that the plaintiff tried to borrow money from her mother, and that her mother refused to loan it to her. When the plaintiff was called upon ostensibly to contradict these witnesses, she was, in substance, asked whether the statements made by such witnesses were true. Those questions were objected to, under section 829 of the Code of Civil Procedure, and the objections were sustained; the testimony being excluded. It is now claimed that the evident purpose of these questions was to prove by the plaintiff that no conversations of the character stated by this witness took place between the plaintiff and her father and mother. It is apparent that the object was not to prove only that such conversations did not occur, but the form in which the questions were put necessarily involved answers as to the substance of communications between the plaintiff and her parents. It is claimed that, inasmuch as the defendant called these witnesses and examined them respecting the conversations, the plaintiff had the right to contradict them and give her versions of these conversations, and support for this position is claimed upon what was decided in Nay v. Curley, 113 N. Y. 575, 21 N. E. 698. It was held in that case that, where the door is opened by a party calling a witness, "and examining him as to a particular part of a communication or transaction, the other party may call out the whole of the communication or transaction bearing upon or tending to explain or qualify the particular part to which the examination of the other party was directed"; and this, irrespective of the provision of section 829 of the Code of Civil Procedure, which, under such circumstances, would not control. But these questions under consideration here were not directed to supplying omitted parts of a conversation. They were addressed to the truth or falsity of that which the defendant's witnesses had sworn was the subject-matter of the conversations. Nor were the questions of such a character as would bring the case within the ruling of Pinney v. Orth, 88 N. Y. 451, or Lewis v. Merritt, 98 N. Y. 206, as those cases are explained in Clift v. Moses, 112 N. Y. 438, 20 N. E. 392. In the case last cited it is said:

"It was held in Pinney v. Orth that the prohibition of section 829 did not pre-clude the survivor from testifying to extraneous facts and circumstances which tend to show that a witness who has testified affirmatively to such [personal] transaction or communication has testified falsely, and consequently that the survivor might testify that a witness on the other side was never present at any interview between the survivor and the deceased person, as he had testi-fied, thereby inferentially negativing the existence of any conversation such as was related by that witness. But the court confined the range of permissi-ble contradiction within narrow limits, and expressly held that it could not be extended to include testimony by the survivor of what was or was not said between the parties to the conversation sworn to by a witness on the other side, although the evidence was offered to contradict his narration of the transaction."

The questions asked of the plaintiff and overruled by the court in this connection were not of that independent character which would justify the plaintiff testifying. An answer to them would have been more than a mere denial of the defendant's witnesses being present and having heard such conversations. Those an-swers would have gone to the very substance of communications between the plaintiff and her parents, and, as we think, fall within the rule of decision in Clift v. Moses, supra. That a party may tes-tify to outside facts tending to contradict evidence given by ad-verse witnesses, though those facts may independently tend to es-tablish an inference that a transaction or communication has or has not taken place with a deceased, may be true; but that is not this case. We have examined the other exceptions to the rulings upon evidence, and do not find that they require any particular comment.

The judgment must be affirmed, with costs. All concur.